## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

American Farm Bureau Federation
and National Pork Producers Council,

               Plaintiffs,

     v.

U.S. Environmental Protection Agency and
Gina McCarthy,

               Defendants,

and

Food & Water Watch, Environmental Integrity
Project, and Iowa Citizens for Community Improvement,

               Intervenors.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 13-1751 ADM/TNL

_____

Jay C. Johnson, Esq., Venable LLP, Minneapolis, MN for Plaintiff.

Pamela Marentette, Esq., United States Attorney's Office, Minneapolis, MN for Defendants.

Jeffrey Gulley, Esq., Government Accountability Project, Washington, D.C. for Intervenors.

_____

## I.  INTRODUCTION

On December 17, 2014, the undersigned United States District Court Judge heard oral

argument on the above captioned parties' cross motions for Summary Judgment [Docket Nos. 84 and

98] and Intervenors' Motion for Judgment on the Pleadings, or in the Alternative, for Summary

Judgment [Docket No. 91].  For the reasons discussed below, Defendants' and Intervenors' motions

are **GRANTED** based on Plaintiffs' lack of standing.

## II.  BACKGROUND

### A.  Concentrated Animal Feeding Operations

Farms that confine large numbers of animals for more than 45 days during a growing season in an area that does not produce vegetation are called Concentrated Animal Feeding Operations ("CAFOs").  The Environmental Protection Agency ("EPA") has identified agriculture in general, and CAFOs in particular, as a leading source of pollution in our nation's rivers and streams.  Nagle Decl. [Docket No. 69] ¶ 13.  The Clean Water Act ("CWA") names CAFOs as "point sources" of pollution. Id. ¶ 7; See also 33 U.S.C. § 1311(a).

### B.  The Environmental Protection Agency's duties under the Clean Water Act

The CWA requires the EPA to "restore and maintain the chemical, physical and biological integrity of the Nation's waters."  Nagle Decl. ¶ 4; See 33 U.S.C. § 1251(a).  The CWA also restricts the pollutants that are permitted from point sources, like CAFOs.  33 U.S.C. § 1311(a).  Agriculture pollution discharges are generally regulated under the National Pollutant Discharge Elimination System ("NPDES") permit program.  Nagle Decl. ¶ 7; See 33 U.S.C. § 1342.  NPDES permits for CAFOs require disclosure of the farm's location and other operational details.  Nagle Decl. ¶ 10; See 40 C.F.R. §§ 122.21(i), 122.23(d).  Most states are authorized to administer NPDES programs and state and federal regulations require that information collected by the states be made public.  40 C.F.R. § 123.41(a).

### C.  EPA's collection of CAFO information

In 2008, the General Accountability Office issued a report concluding that the EPA did not

possess the "reliable information it needs to identify and inspect CAFOs nationwide."  Nagle Dec. ¶¶

15, 74.  Initially, the EPA proposed a regulation that would have required CAFOs to report

information to the Agency directly.  Id. ¶ 18.  The EPA withdrew the proposed rule after receiving

many comments in opposition from industry representatives.  Nagle Decl. ¶ 21.  Instead, the EPA

began gathering public data about CAFOs that was already publicly available from state databases.  Id.

**D.  Freedom of Information Act requests for CAFO information**

In the fall of 2012, the EPA received two Freedom of Information Act ("FOIA") requests for

CAFO information.  Id. ¶ 31.  The EPA first released responsive information in January and February

2013.  Id. ¶ 34.  After Plaintiffs and other interest groups expressed concern about their privacy rights

being violated through the EPA's disclosure of CAFO information, the EPA conducted further review

of the information it had already disclosed.  Id. ¶ 31.  The EPA subsequently amended its response to

the FOIA requests on April 4, 2013 and again on April 30, 2013.  Id. ¶ 42.  The EPA has yet to

release CAFO information related to Minnesota and Iowa farms at issue in this case and has agreed to

postpone its response to the outstanding FOIA requests until this litigation is resolved.  Id. ¶ 50.

**E.  Basis for Plaintiffs' suit against the EPA**

Plaintiffs move under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, to prohibit

the EPA's release of their members' personal information—including the physical address and other

operational details about the farms—in response to FOIA requests.  Pls.' Mem. Supp. Summ. J.

[Docket No. 86] 8.  Plaintiffs argue the EPA acted arbitrarily and capriciously, or contrary to law, in

releasing personal information of farmers that is protected under a FOIA exemption.  Id.  Specifically,

Plaintiffs argue that their members' personal information is protected by FOIA Exemption 6, which

3

safeguards "personal, medical, or similar file[s], the release of which would constitute a clearly

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Id.

## III. DISCUSSION

Defendants and Intervenors argue Plaintiffs lack standing to bring this lawsuit because none of

the individuals on whose behalf Plaintiffs seek relief have suffered or will imminently suffer direct injury

as a result of Defendants' anticipated actions.  Defs.' Mem. Supp. Summ. J. [Docket No. 100] 17;

Interv. Mem. Supp. Mot. J. Plead. / Summ. J. [Docket No. 93] 15.  Plaintiffs argue that their

members' privacy interests will be injured if and when the EPA disseminates relevant CAFO

information.  Pls.' Reply Mem. Supp. Summ. J. [Docket No. 104] 23.  Plaintiffs also argue their

members are "justifiably concerned that invasions of privacy are directly linked to physical invasion of

property—at least one member has already experienced such an invasion."  Id. at 24.

"No principle is more fundamental to the judiciary's proper role in our system of government

than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."

DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006) (internal quotations omitted).  One element

of the constitutional case or controversy requirement is standing.  Raines v. Byrd, 521 U.S. 811, 818

(1997).  Three elements must be shown to establish standing: (1) an injury that is concrete and

particularized, or actual and imminent—not conjectural or hypothetical; (2) a causal relationship

between the injury that is "fairly traceable" to the challenged action of the defendant; and (3) it must be

"likely" as opposed to merely "speculative" that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ( internal citations omitted).

Membership organizations, like Plaintiffs American Farm Bureau Federation and National Pork

4

Producers Council, have standing to sue on behalf of their members so long as the remedy sought will benefit the individual members who allege injury. Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). At summary judgment, plaintiffs must set forth specific facts by affidavit, which taken as true, demonstrate the nature of the injury suffered. Lujan, 504 U.S. at 561.

Plaintiffs submitted one affidavit from American Farm Bureau member Patrick Lunemann with their Complaint. Lunemann Decl. [Docket No. 10]. Plaintiffs attached five additional member declarations ("Other Declarations") to their brief in opposition to the EPA's Motion for Summary Judgment.[1]  Other Decls. [Docket No. 105-1] 7-21. Lunemann's declaration, like each of the other five declarations, states that "I consider the uncontrolled distribution of my personal information to be an invasion of our privacy." Lunemann Decl. ¶ 7; See also Other Decls. 7-21. The Other Declarations also express sentiments such as "[w]idespread disclosure of my personal information, uncontrolled by me, makes me and my family more likely to receive disturbing threats and potentially targeted criminal activity" and "[w]idespread, uncontrolled disclosure of personal information makes my farm more vulnerable to agroterrorism—including the introduction of animal diseases into the food supply—which the Federal Bureau of Investigation ("FBI"), Department of Homeland Security, and many state agencies have identified as a current and serious threat." Other Decls. 8, 14 and 9, 15.

---

[1]  The EPA argues that the five additional affidavits are untimely filed under Federal Rule of Civil Procedure 6(c)(2) and therefore should not be considered by the Court. However, in addition to stating that "[a]ny affidavit supporting a motion must be served with the motion," Rule 6(c)(2) also states that "any opposing affidavit must be served at least 7 days before the hearing, unless the court permits service at another time." Because Plaintiffs additional affidavits were served as exhibits to their memorandum in opposition to the EPA's Motion for Summary Judgment more than 7 days before the hearing, the affidavits were timely filed and will be considered.

Declarant Rick Grommersch avers that in 2006, environmental activists associated with the group Compassionate Action for Animals climbed over a fence on his property to take photos of items on his farm.  Grommersch Decl. ¶ 11.  Another declarant, David Rydberg, states that "I am aware of farmers who receive threatening letters and telephone calls from extreme animal rights activists" and "[i]n recent months, there has been news coverage of one activist's campaign to employ drones to fly over and photograph farms."  Rydberg Decl. ¶¶ 9 and 10.

The affidavits submitted by Plaintiffs fail to establish standing on behalf of any of their individual members.  First, Plaintiffs fail to demonstrate an actual or imminent injury.  The primary anticipated injury alleged by Plaintiffs is that they will "lose control of their personal information."  Pls.' Mem. Opp. Summ. J. [Docket No. 104] 24.  However, Plaintiffs fail to establish how the EPA's potential release of already public information constitutes a loss of control over their personal information.  All six declarants acknowledge that they provided the physical address and a description of their farms to government officials as part of the NPDES permit process.  Lunemann Decl. ¶ 4; Other Decls. 7-21.  This information is required to be public by law. 40 C.F.R. § 123.41(a).[2]

Plaintiffs rely on the Supreme Court's decision in United States DOJ v. Reporters Comm. For

_____

[2]  Plaintiffs do not dispute that the information they seek to prevent the EPA from disclosing is already publicly available through the Minnesota Pollution Control Agency's ("MPCA") website and the Iowa Department of Natural Resources ("Iowa DNR") website.  For example, any member of the public can search the MPCA's website under "data" and "What's in My Neighborhood" tab and identify a large spectrum of environmentally sensitive activities—including CAFOs—by searching owner names, type of activity, city, and more.  In addition, information about the farms owned by at least four of the declarants, including the farm's address, is also available through a simple Google search.  Declarant Patrick Lunemann's farm, Twin Eagle Dairy, lists the farm's address on its promotional Facebook page.

Freedom of Press for the proposition that a farmer's privacy interest in his personal information does not evaporate simply because the farmer is required to disclose certain information to obtain a permit. 489 U.S. 749, 763 (1989).  As argued by Plaintiffs, "[t]he past public availability of piecemeal information does not eliminate the 'potential invasion of privacy' that results from the present disclosure of information."  Pls.' Mem. Supp. Summ. J. at 18.

Reporters Committee is distinguishable on several grounds.  The Court in Reporters Committee held that the FBI could not respond to FOIA requests that sought summaries of criminal rap sheet information without violating those individual's right to control information concerning his or her person. 489 U.S. 74 at 763.  Critical to the Court's decision, published in 1989—well before widespread use of the internet—was the distinction between "scattered disclosure of the bits of information contained in a rap sheet" that were a matter of public record but difficult to obtain, and "revelation of the rap sheet as a whole."  Id.  The Court also noted the "web" of federal and state laws that limited, and often shielded, nonconviction rap sheet information from the public.  Id. at 764-65.

In this case, the relevant web of federal and state laws make disclosure of the NPDES data Plaintiffs seek to protect *mandatory*.  See 33 U.S.C. §§ 1342(b)(3) (setting forth guidelines for state permit programs, including "[t]o insure that the public . . . receive notice of each application for a permit and to provide an opportunity for public hearing before a ruling on each such application."); see also 33 U.S.C. §§ 1342(b)(3) ("A copy of each permit application and each permit issued under this section shall be available to the public.  Such permit application or permit, or portion thereof, shall further be available on request for the purpose of reproduction.").  These public engagement regulations are designed by the EPA to fulfill its duties under the CWA, which seeks to protect the integrity of our

nation's waterways.  The public's interest in clean water sources, and thus transparency related to identified pollution sources, is certain.

The other critical distinction to draw between Reporter's Committee and this case is the ease with which the information Plaintiffs seek to protect can be found on the internet.  Whereas some of the information in Reporter's Committee was public, it was difficult to obtain.  489 U.S. 749, 764 (1989) ("Plainly there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information.").  Here, the information Plaintiffs want protected is easily accessible and widely available, often times voluntarily so by the farmers who seek to promote their business.  Under these circumstances, the EPA's distribution of already public information does not establish an injury for purposes of constitutional standing.[3]

Plaintiffs also argue that their members are "likely to be further victimized as a result" of the EPA's disclosure of their personal information by environmental activists and animal rights groups.  Grommersch Decl. ¶ 9; Rydberg Decl. ¶ 9.  This argument does nothing to cure Plaintiffs' lack of actual injury.  Rick Grommersch is the only declarant who has experienced environmental activists entering his

---

[3] Plaintiffs also argue that the Eighth Circuit's decision in Campaign for Family Farms v. Glickman supports their position that disclosure of some information to the government for a limited purpose does not mean that the information should necessarily be available to the general public.  200 F.3d 1180, 1188 (8th Cir. 2000).  However, Glickman involved the disclosure of names and other information of farmers who signed a petition that the Court deemed equivalent to a secret ballot.  "While we need not decide whether there is a constitutional right to a secret ballot, we do not hesitate to hold that there is a strong privacy interest in a secret ballot and that this privacy interest is no less compelling in the context of FOIA's personal privacy exemption than it is in other contexts."  Id.  In this case, the law requires that basic information about CAFO operations be public.  There is no analogous secret ballot to support Plaintiffs' position.

property.  Grommersch's experience, which occurred nearly ten years ago, combined with the other declarants' concern that they are "likely" to be victims of such activist tactics, is speculative, falling short of an actual or imminent injury.

Even if Plaintiffs could establish an actual injury, highlighting Grommersch's experience demonstrates the difficulty Plaintiffs have in establishing the second and third elements of standing. First, the incident on Grommersch's property occurred in 2006, years before the EPA ever responded to any FOIA request with CAFO information, underscoring the ease with which activist groups can identify the location of large farms.  Furthermore, "[w]hen the injury alleged is the result of actions by some third party, not the defendant, the plaintiff cannot satisfy the causation element of the standing inquiry."  Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 935 (2012).  The potential injuries of which Plaintiffs express concern are alleged to be executed by third parties, not the EPA.

Finally, establishing redressability, the third element of standing, will likewise be very difficult. Because the Plaintiffs' member farmers' information, including their physical addresses, is publicly available from multiple sources, Plaintiffs face an seemingly impossible task of showing that prohibiting the EPA's distribution of already public information will redress the speculative injuries they currently allege.  For all of these reasons, Plaintiffs do not have constitutional standing in this matter.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

Defendants' and Intervenors' Motions for Summary Judgment [Docket Nos. 98 and 91] are

**GRANTED** and Plaintiffs' Motion for Summary Judgment [Docket No. 84] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 27, 2015.